# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-376

**CRYSTAL STEPHENS**

**VERSUS**

**MARY J. KING, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C-79,209, DIV. B
HONORABLE LALA B. SYLVESTER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JIMMIE C. PETERS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and Billy H. Ezell, Judges.

**REVERSED AND RENDERED.**

**William D. Dyess**
**Dyess Law Firm, LLC**
**207 Church Street, Suite 106**
**Natchitoches, Louisiana 71457**
**(318) 352-5880**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Crystal Stephens**

**W. Brett Cain**
**P. O. Box 92807**
**Lafayette, Louisiana 70509**
**(877) 323-8040**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Safeway Insurance Co. of Louisiana**

**PETERS, J.**

One of the defendants in this litigation, Safeway Insurance Co. of Louisiana (Safeway), appeals the trial court's judgment awarding the plaintiff, Crystal Stephens, $12,000.00 in general damages and $5,500.00 in medical expenses against it and Mary J. King.[1] For the following reasons, we reverse that portion of the trial court judgment awarding Ms. Stephens damages against Safeway and render judgment in favor of Safeway dismissing Ms. Stephens' claims for damages against it.

## DISCUSSION OF THE RECORD

The facts of the automobile accident giving rise to this litigation are not in dispute. The accident occurred at the intersection of North and Trudeau Streets in Natchitoches, Louisiana, on June 19, 2005, when Ms. King's vehicle backed into Ms. Stephens' vehicle. At the time of the accident, Ms. King was driving a vehicle she rented from Avis Rental Car System, Inc. (Avis), and Ms. Stephens was driving a vehicle she rented from Enterprise Rent-A-Car (Enterprise). Safeway is Ms. Stephens' uninsured/underinsured motorist (UM) insurance provider.

Ms. Stephens initially filed suit against Safeway and Ms. King. She later amended her pleadings to name Avis as a defendant as well. Avis subsequently paid Ms. Stephens $10,000.00 in damages and was dismissed from the litigation in 2014.[2] The matter went to trial on December 1, 2015, as a bench trial,[3] and on

---

[1] Although the trial court rendered judgment against both Ms. King and Safeway, the record raises questions concerning service on, and notice to, Ms. King throughout the litigation. However, those issues are not before us, and we will only address the liability of Safeway to Ms. Stephens.

[2] The history of other pleadings filed in the record but not pertinent to this appeal are not included in this opinion.

[3] The evidentiary phase of the trial was not completed on December 1, 2015, as the trial court left the record open for thirty days to allow Ms. Stephens' counsel to obtain the deposition of a treating physician. Additionally, the trial court ordered that the litigants provide post-trial memorandums.

February 8, 2016, the trial court executed a judgment awarding Ms. Stephens damages against both Ms. King and Safeway.

Safeway timely appealed the trial court's judgment, asserting four assignments of error:

1.     The trial court erred in allowing plaintiff to introduce exhibit evidence over the objection of defendant when the plaintiff did not comply with the pre-trial order directing all parties to produce their exhibits at least fourteen days before trial.

2.     The trial court erred in allowing the introduction into evidence of an affidavit that was not admissible by statute over the objection of the defendant.

3.     The trial court erred in finding that the plaintiff satisfied their burden of proof in establishing that defendant MARY J. KING was under insured or uninsured.

4.     The trial court erred in awarding plaintiff general damages of $12,000.00 and medical expenses of $5,500.00.

## OPINION

Safeway acknowledges that under its policy it provides Ms. Stephens UM coverage, but denies that Ms. Stephens established that Ms. King was an UM. Because we find merit in that argument, we need not consider all of Safeway's assignments of error.

The evidence relied on by Ms. Stephens to establish Ms. King's UM status was a January 2, 2014 affidavit executed by Tom Abbott, a Virginia Beach, Virginia, Avis employee.  In his affidavit, Mr. Abbott asserted that Avis assigned him the claim file produced as a result of the accident, acknowledged that Ms. King rented the Avis vehicle involved in the accident, and stated the following with regard to the issuance of any insurance to Ms. King:

5.     Customers who rent a vehicle from Avis are offered the opportunity to purchase the optional liability coverage.

6.     According to rental agreement, Mary Jo King did not purchase any of the optional supplemental coverages, including but not

2

limited to: Supplemental Liability Insurance at the time of the rental.

7. Except where required by law to be primary, any protection provided by Avis shall be secondary to and not in excess of any applicable insurance available to Mary Jo King from any other source, whether primary, excess, secondary or contingent in any way; or if specifically requested and paid for by the renter.

8. Since Mary Jo King did not purchase the optional liability coverage, and there has been no valid personal automobile liability insurance found for either [sic] Mary Jo King that provides primary coverage pursuant to the rental agreement, Avis will provide liability protection for the renter and any additional authorized driver up to the state's minimum limits of $10,000/$20,000 under the terms of the rental agreement.

Without this affidavit, the record contains no evidence of Ms. King's insured status; when counsel for Ms. Stephens offered this affidavit, counsel for Safeway objected to it being introduced into evidence because it was hearsay. Counsel for Ms. Stephens argued that the affidavit was an exception to the hearsay rule in that it was a business record. The question of the admissibility of an affidavit is a question of law, and "[a]ppellate review of questions of law is to discern whether the district court's interpretative decision is legally correct. If legal error is found, the legal conclusions of the district court are thus subject to *de novo* review by this Court." *Forum for Equal. PAC v. McKeithen*, 04-2477, 04-2523, p. 10 (La. 1/19/05), 893 So.2d 715, 723 (citation omitted).

Both litigants agree that "[i]n an uninsured motorist claim, plaintiff has the burden of proof that the owner or operator of the vehicle was uninsured or underinsured at the time of the accident." *Bullock v. Commercial Union Ins. Co.*, 397 So.2d 13, 14 (La.App. 3 Cir. 1981). Additionally, Louisiana statutory law provides that affidavit evidence may be used to establish the UM status of a driver of a vehicle involved in an automobile accident. However, the affidavit evidence

3

must comply with the statutory authorization found in La.R.S. 22:1295(6) [4] (emphasis added) which provides three ways to make a prima facie showing that a motorist is uninsured/underinsured using affidavit testimony:

In any action to enforce a claim under the uninsured motorist provisions of an automobile liability policy the following shall be admissible as prima facie proof that the owner and operator of the vehicle involved did not have automobile liability insurance in effect on the date of the accident in question:

(a) The introduction of sworn notarized *affidavits from the owner and the operator of the alleged uninsured vehicle* attesting to their current addresses and declaring that they did not have automobile liability insurance in effect covering the vehicle in question on the date of the accident in question. When the owner and the operator of the vehicle in question are the same person, this fact shall be attested to in a single affidavit.

(b) A sworn notarized affidavit *by an official of the Department of Public Safety and Corrections* to the effect that inquiry has been made pursuant to R.S. 32:871 by depositing the inquiry with the United States mail, postage prepaid, to the address of the owner and operator as shown on the accident report, and that neither the owner nor the operator has responded within thirty days of the inquiry, or that the owner or operator, or both, have responded negatively as to the required security, or a sworn notarized affidavit by an official of the Department of Public Safety and Corrections that said department has not or cannot make an inquiry regarding insurance. This affidavit shall be served by certified mail upon all parties fifteen days prior to introduction into evidence.

(c) *Any admissible evidence* showing that the owner and operator of the alleged uninsured vehicle was a nonresident or not a citizen of Louisiana on the date of the accident in question, or that the residency and citizenship of the owner or operator of the alleged uninsured vehicle is unknown, *together with a sworn notarized affidavit by an official of the Department of Public Safety and Corrections* to the effect that on the date of the accident in question, neither the owner nor the operator had in effect a policy of automobile liability insurance.

(d) The effect of the prima facie evidence referred to in Subparagraphs (a), (b), and (c) of this Paragraph is to shift the burden of proof from the party or parties alleging the uninsured status of the vehicle in question to their uninsured motorist insurer.

---

[4] We note that La.R.S. 22:1295 has been amended several times since the accident in this case. However, the language of La.R.S. 22:1295(6) has remained virtually unchanged. We cite to the current version of the statute for this reason.

4

However, if prima facie evidence consistent with the statutory requirements is not presented, the plaintiff may still prove the uninsured status of a motorist through other evidence. *Bullock*, 397 So.2d 13.

In the matter before us, we find that Mr. Abbott's affidavit is clearly hearsay as that term is defined in La.Code Evid. art. 801. As pointed out in La.Code Evid. art. 802, "[h]earsay is not admissible except as otherwise provided by this Code or by other legislation." The affidavit does not fall within the exceptions set forth in La.R.S. 22:1295(6), and it does not fall within the exception to the hearsay rule for records of regularly conducted business activity. While Mr. Abbott may have used business records to obtain some of the information in formulating the affidavit, the affidavit itself is not one of those business records described in La.Code Evid. art. 803(6).

Because the trial court erred as a matter of law in allowing the introduction of Mr. Abbott's affidavit, our reviewing responsibility is to perform a *de novo* review of the record. In performing such a review, we conclude that no other evidence exists to establish Ms. King's UM status and, therefore, Ms. Stephens failed in her burden of proof as to the liability of Safeway. We reverse the trial court judgment rendered against Safeway in favor of Ms. Stephens and render judgment dismissing her claims against Safeway. Having reached this conclusion, we need not consider the remaining assignments of error.

### DISPOSITION

For the foregoing reasons, we reverse the judgment of the trial court finding Safeway Insurance Co. of Louisiana jointly liable with Mary J. King for Crystal Stephens' damages in the accident in this case and render judgment dismissing all claims for damages by Crystal Stephens against Safeway Insurance Co. of Louisiana. We assess all costs of this appeal to Crystal Stephens.

5

**REVERSED AND RENDERED.**